## 51065. COLUMBIA NITROGEN CORPORATION v. DEAN'S POWER OIL COMPANY, INC.

CLARK, Judge.

Defendant Columbia Nitrogen Corporation appeals from the denial of its motion for summary judgment with the requisite review certificate. Finding no genuine issue of material fact we reverse.

Dean's Power Oil Company ("buyer") sued Columbia Nitrogen Corporation ("seller" or "Columbia") for breach of a land sales contract. The complaint seeks either specific performance (count one) or pecuniary damages (count two) arising on account of seller's refusal to convey the property in question. The factual basis for this declination was an outstanding commitment by Columbia made to the party ("C. O. Smith family") in 1967 when Columbia had purchased the property whereby that party was given first option to re-acquire the realty in the event Columbia subsequently desired to sell.

The sales contract sued on was a printed Moultrie Real Estate Board standard form. It contained two alterations, both of which carry the initials "JEH." Presumably these initials were those of "John E. Hunt" whose signature appears as the witness above the notary public signature on the contract as to both purchaser and seller. The signature of "John E. Hunt" also appears on the holographic document which is referred to in the handwritten alteration as "See Exh. B JEH."

This latter alteration struck the typewritten terms of payment from the standard form contract. The attached document entitled "Exh. B" contains various special stipulations. Among these are a description of the realty by attached plat designated "Exhibit A," provision for seller to continue use of a portion of the property for purposes of disposal of waste material for a stated period, the manner for transfer of personal property and equipment, that the sales price of $100,000 was to be cash at closing, and allocation between seller and buyer as to deed tax and title insurance. This plat shows the adjoining owner to be "C. O. Smith Jr. Farms, Inc."

The final paragraph is pertinent to our discussion

and reads as follows: "Sale of the property hereunder is contingent and subject to any covenants that exist between seller and the C. O. Smith family." This supplement is signed by John E. Hunt for "Dean Power Oil Company, Inc." and D. B. Bolander for Columbia Nitrogen Corporation. The printed standard form was also signed by Bolander for the seller corporation, he designating himself thereon as vice president. Both on that printed form and also on the handwritten "Exh. B" Bolander entered as a part of his signature the figures "2/2/74." The standard printed form carried at its top the typewritten date of "February 1, 1974." Whereas the holographic exhibit was signed by John E. Hunt for the buyer corporation, the printed form was executed in its behalf by Jerry D. Dorminey. Although the document did not show his position with the buyer corporation, the record contains an affidavit showing him to be the president. The contract must therefore be considered as being the printed standard form, the holographic supplement referred to as "Exh. B," and the plat of the property attached to the supplement.

In support of its motion for summary judgment, seller filed affidavits of Allen Johnson, corporate counsel and an officer and employee of defendant seller corporation, and Clem White, secretary of defendant seller corporation. Johnson averred that he "specifically informed plaintiff's agents and employees of the existence of Smith's right of refusal and option with regard to the subject property" and "insisted that reference be made in any purported sales contract to that right of first refusal and contingency, and that the parties to the purported sales contract insert the following language: 'Sale of the property hereunder is contingent and subject to any covenants that exist between seller and the C. O. Smith family.' Therefore," Johnson concluded, "prior to the execution of the purported sales contract . . . plaintiff, his [sic] agents and employees were completely informed of the existence of Smith's right of first refusal. . ."

In his affidavit, Clem White averred: "On or about January 3, 1967, defendant, Columbia Nitrogen Corporation, purchased certain property in Colquitt County, Georgia, from C. O. Smith Guano Company of

which C. O. Smith, Jr. was president. As a part of and immediately after that purchase transaction, Columbia Nitrogen Corporation and Smith entered mutual agreements affording each an option and first refusal to acquire certain property of the other . . . Columbia Nitrogen Corporation did in fact enter into an agreement (prior to the time plaintiff filed its complaint herein) with C. O. Smith, Jr. as general partner of C. O. Smith, Jr. Farms, a limited partnership, which agreement acknowledged and specified in writing the mutual agreements of the parties affording each first refusal to acquire certain property of the other. . ."

The "first refusal" agreement between defendant seller and Smith provides that "Columbia and Smith have previously had mutual agreements affording each first refusal to acquire certain property of the other in the event either desired to sell such property at and on the terms of any acceptable bona fide offer"; that Columbia desires to sell the property in question having received "an acceptable bona fide offer" from the plaintiff; that Columbia "desires to afford Smith first refusal of the property. . . and Smith desires to purchase" the property; that Columbia will notify its real estate agent "of its prior commitment to sell to Smith and request that it so notify the prospective purchaser [plaintiff] and return its earnest money. . ."; that "Upon the acceptance of a return of earnest money by the prospective purchaser or upon the expiration of the time for performance under the purported real estate contract without an effort to perform by the prospective purchaser or as soon as it can be reasonably assumed that there is no impediment to the conveyance by Columbia to Smith, Columbia shall deliver to Smith a warranty deed to the premises. . ."

Buyer submitted the affidavits of Matt Friedlander and Jerry D. Dorminey in opposition to seller's motion for summary judgment. In his affidavit, Friedlander averred "that he was instrumental in negotiating a sales agreement between Dean Power Oil Company, Inc.[1] and Columbia Nitrogen Corporation whereby Columbia

---

[1]This is the name of buyer as it appears on the sales contract but the correct name is "Dean's Power Oil

Nitrogen Corporation agreed to sell to Dean Power Oil Company, Inc. 38.334 acres of land located in Colquitt County, Georgia. . . [T]hat at no time was there any mention to him of any covenants as to the land involved in the negotiation, i.e. covenants which involved the C. O. Smith family. . . that he acted as agent for the seller and accepted $5,000.00 as earnest money on behalf of Columbia Nitrogen Corporation. . . [and] that he kept the $5,000.00 until on or about October 1, 1974, when this sum was returned to Dean Power Oil Company, Inc. . . ."

Jerry D. Dorminey averred that he is the president of the buyer corporation; that "he has never been informed of any rights of the C. O. Smith family concerning property which his company contracted to purchase from Columbia Nitrogen Corporation other than was shown in the agreement of purchase and sale"; that "he has not been informed or does not know of any agent or employee of Dean's Power Oil Company, Inc. that had knowledge of any of the statements concerning the potential sale to C. O. Smith family as outlined in the statement of Alan Johnson. . ."; and that "he of his own personal knowledge knows that his company expended funds in the clearing and cleaning of the site which his company intended to purchase from Columbia Nitrogen Corporation and at no time. . . was he made aware of any claim of the C. O. Smith family concerning their right to purchase the property."

There is no affidavit from John E. Hunt whose initials of "J. E. H." appeared alongside the alterations and whose signature without designation of position appears on the holographic exhibit as signing for "Dean Power Oil Company."

1. "While parol evidence is usually inadmissible to add to, contradict, or vary the terms of a written contract which has become operative between the parties by reason of its execution and delivery, still parol evidence is admissible to show that a contract apparently operative between the parties was never fully executed or delivered, or that it was not to become a completed contract until certain prerequisites had been complied with. [Cits.]"

Company" as shown by the use of the apostrophized surname in the affidavit of its president.

*Equitable Mfg. Co. v. Hill-Atkinson Co.,* 17 Ga. App. 494 (3) (87 SE 715); *South Ga. Trust Co. v. Crandall,* 47 Ga. App. 328 (4) (170 SE 333). A fortiori, where a written contract incorporates an ambiguous condition, parol evidence is admissible to aid in the construction of the condition. See Code §§ 20-704 (1), 38-502; 11 EGL 325, Evidence, § 76.

In the instant case, seller's parol evidence does not tend to vary or contradict the terms of the sales contract. To the contrary, seller's parol evidence permissibly explains the ambiguity in the clause: "Sale of the property hereunder is contingent and subject to any covenants that exist between seller and the C. O. Smith family." The seller's explanation of the clause is that C. O. Smith, Jr. had the first option to purchase the real estate in question. Thus, by parol evidence, seller demonstrated the ambiguous clause to be a condition precedent, the performance of which was necessary to render the contract binding and enforceable. Code § 20-110.

Seller's affidavits state that Johnson specifically informed the buyer's agents and employees of the existence of the right of refusal commitment and that he had insisted upon reference being made in the written agreement to it and for the parties to insert the quoted language making the sale "contingent and subject to any covenants that exist between seller and the C. O. Smith family."

Neither of the two affidavits submitted by plaintiff buyer in rebuttal contradicts seller's contention as to the existence of the condition precedent or seller's parol evidence as to the meaning of the contract's ambiguous clause. Friedland's affidavit describes himself as president of Mattco, Inc. which acted as agent for the seller corporation, Columbia, and that he was instrumental in negotiating the sales contract for the property which is described in his affidavit as "38.334 acres of land located in Colquitt County, Georgia. The land referred to being the property on which Columbia Nitrogen Chemical Plant is located south of the City of Moultrie." That description is substantially the same as is contained on the printed form that carried the date of "February 1, 1974" as compared to the supplement "Exh.

B" which described the land as "Parcel 10 and Parcel 11 as shown on attached Exhibit A" (which was the plat). Bolander's signatures on both documents constituting the entire contract carries the legend "2/2/74." Similarly Dorminey's affidavit as president of the plaintiff buyer corporation does not contradict Johnson's averment that he (Johnson) informed buyer's agents of the condition precedent but is limited to ignorance even though his corporation in effect ratified the act of John E. Hunt in signing the supplement ("Exh. B") for the buyer corporation when he brought the instant action for specific performance. The condition precedent is stated in "Exh. B" along with the other details to which we made reference in our recital of the facts.

"A defendant who has cast upon a plaintiff the burden of responding with evidence to create or preserve a genuine issue of fact is entitled to prevail by summary judgment in the absence of any rebuttal evidence." *Walker v. Hall,* 123 Ga. App. 457 (1) (181 SE2d 508).

"If the movant carries his initial burden, as was done in this case, and the respondent does not present refuting evidence that is adequate to raise an issue of fact, a summary judgment for the movant must be granted. [Cits.]" *Richards v. Tolbert,* 232 Ga. 678 (208 SE2d 486). See also *Zappa v. Allstate Ins. Co.,* 118 Ga. App. 235 (162 SE2d 911); *Stephens County v. Gaines,* 128 Ga. App. 661 (197 SE2d 424); *Continental Carriers v. Seaboard C. L. R. Co.,* 129 Ga. App. 889 (201 SE2d 826).

Through the affidavits submitted by movant, Columbia established a prima facie right to summary judgment by showing that the contract sued upon by plaintiff buyer was in effect inchoate. Thus, the plaintiff had the burden of producing evidence sufficient to contravene defendant's affirmations. Plaintiff's opposing affidavits did not meet this burden.

2. Buyer asserts that the statute of frauds renders seller's convenant with C. O. Smith, Jr. of no effect since the covenant was not reduced to writing at the time the contract sued upon was executed. (See Code § 20-401 (4) which makes "Any contract for sale of lands, or any interest in, or concerning them" subject to the statute of frauds.) Inasmuch as the statute of frauds is a personal

defense (see *Williamson & Co. v. Morgan,* 26 Ga. App. 713 (1) (106 SE 916)), buyer is not in a position to raise the statute, not having been a party to the covenant.

3. Buyer apparently contends that seller is estopped to deny the enforceability of the sales contract since buyer "was allowed to take possession of the property in question and expended monies for improvement." (Brief for Appellee at p. 7). We disagree.

The expenditure of funds by buyer did not result from seller's conduct or silence, but from buyer's negligence. For buyer acted notwithstanding the terms of the sales contract; and seller was not obliged to remind buyer of those terms. A buyer "is wilfully negligent if he fails to look and see for himself, and he cannot be heard, either in law or equity, to complain of the conduct of the seller, the effects of which could have been averted by slight diligence on his part. [Cits.]" *Hays v. McGinness,* 208 Ga. 547, 550 (67 SE2d 720). See also *Jones v. Tri-State Elec. Co-op.,* 212 Ga. 577 (94 SE2d 497); *Tybrisa Co. v. Tybeeland,* 220 Ga. 442 (139 SE2d 302).

4. In view of our ruling in Division 1, it is unnecessary to consider seller's contention that its vice president was not cloaked with sufficient authority to bind Columbia on the contract.

*Judgment reversed. Pannell, P. J., and Quillian, J., concur.*

ARGUED SEPTEMBER 3, 1975 — DECIDED NOVEMBER 6, 1975 — REHEARING DENIED DECEMBER 4, 1975.

*Whelchel & Whelchel, John M. Carlton, Jr., Sanders, Hester, Holley, Askin & Dye,* for appellant.
*Fallin & Kirbo, Billy G. Fallin,* for appellee.